UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

TANWA OMOLADE, On Behalf of Her Infant Son, D.F.,

                                                         Plaintiff,

              -against-

SUCCESS ACADEMY CHARTER SCHOOLS, INC.; SUCCESS ACADEMY CHARTER SCHOOL BED-STUY 1; SUCCESS ACADEMY BOARD OF TRUSTEES SAMUEL A. COLE, BRYAN BINDER, SCOTT FRIEDMAN, GREGORY SAWERS, EDWIN CESPEDES, DERRELL BRADFORD, BRIAN LEVINE, SULEMAN LUNAT, JARETT POSNER LORENZO SMITH III, and ANDREW D. STONE; CHIEF EXECUTIVE OFFICER EVA MOSKOWITZ, MARNI ARONSON; JOHN DOE ##1-4,

                                                      Defendants.

------------------------------------------------------------------------ X

COMPLAINT AND JURY DEMAND

Docket No.

ECF CASE

## **PRELIMINARY STATEMENT**

1.     Marni Aronson, Principal of Success Academy Charter School Bed-Stuy 1, said in a statement released on October 1, 2018: "At SA Bed-Stuy 1, we constantly ask ourselves, 'Would our scholars choose to come to school, even if they didn't have to?' The answer is a resounding 'Yes!'"[1]

2.     Scholars may choose to attend Ms. Aronson's school, but not all are welcome to stay.

---

[1] Taken from a Success Academy Press Release located at https://www.successacademies.org/press-releases/two-success-academy-schools-win-national-blue-ribbon-awards/

1

3.      After the investigation of complaints made against Success Academy Charter Schools, the State Department of Education ("SDOE") found that Success Academy fails to meet legal requirements designed to serve and protect the interests of children with disabilities.  Notably, the SDOE found that Success Academy had simply refused legal orders requiring that a student "stay put" at the school, and removed or refused to allow the return of the student in direct contravention of law.  *See* Exhibit A.

4.      This single minded focus on removing students who are otherwise under law entitled to be there drove Success Academy Bed-Stuy 1 and its principal, Marni Aronson, to go to extraordinary lengths to drive D.F., an intelligent and gifted Fourth Grader with a disability, out of the school.

## JURISDICTION AND VENUE

5.      This action is brought pursuant to 28 USC §1331, Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794a) and 42 USC §§1983 and 1988.  Supplemental jurisdiction is asserted over claims under state and local laws.

6.      Venue is laid within the United States District Court for the Eastern District of New York in that a substantial part of the events giving rise to the claim occurred within the boundaries of the Eastern District of New York.

## PARTIES

7.      Tanwa Omolade is a resident of Brooklyn in the City and State of New York. Tanwa Omolade is now and was throughout the events described in the Complaint an NYPD School Safety Agent.  She is the Mother and Legal Guardian of D.F.

8.      Plaintiff D.F. was at all times here relevant a student at Success Academy Bed-Stuy 1.  He is a resident of Brooklyn in the City and State of New York.  D.F. is

diagnosed with Oppositional Defiance Disorder ("ODD") and Attention Deficit/Hyperactivity Disorder ("ADHD").

9. Defendant Success Academy Charter Schools, Inc. ("Success Academy") is a non-profit corporation organized under the laws of the State of Delaware. Success Academy's headquarters are located in New York, New York. Success Academy administers 47 schools in the City of New York. It received direct funding from the federal government and the State of New York, and resources from the City of New York.

10. Defendant Success Academy Bed-Stuy 1("SA Bed-Stuy1) is a charter school wholly controlled and operated by Success Academy.

11. Defendant Marni Aronson was at all times here relevant an employee of Success Academy and the principal of SA Bed-Stuy1.

12. Defendant Board of Trustees Samuel A. Cole, Bryan Binder, Scott Friedman, Gregory R. Sawers, Edwin Cespedes, Derrell Bradford, Brian Levine Suleman Lunat, Jarrett Posner, Lorenzo Smith III and Andrew Stone (collectively "the Board of Trustees") were members of the Success Academy Board of Trustees. Under N.Y. Education Law § 2853(f), the Board of Trustees has final policy making authority for Success Academy and its schools within the network.

13. Defendant Eva Moskowitz is the Chief Executive Officer of Success Academy and has decision making authority for Success Academy.

14. All defendants acted under color of state laws and within the scope of their employment.

## FACTUAL ALLEGATIONS

15. Success Academy schools are public charter schools. As such, like public schools they are required to admit students regardless of their disability.

16. Unfortunately, Success Academy has a track record of targeting students for removal from their schools based on disabilities and other measures. For example, Success Academy Fort Greene established a "got to go" list targeting students for removal in violation of federal laws. Media reports suggest the practice is actually widespread at Success Academy, if a bit more subtle.

17. D.F. is diagnosed with ODD and ADHD. He was attending counseling twice per week to address the matter. D.F.'s ODD substantially limits one or more of major life activities, in his case, his ability to learn, concentrate, and communicate.

18. All of the defendants were aware of D.F.'s diagnoses. However, instead of complying with federal law and frankly, addressing D.F.'s issues with the care human decency would seem to require, the school undertook a sustained campaign to injure and harass D.F. and his mother, Ms. Omolade, with the purpose of driving D.F. out of the school because of his disability.

19. D.F. was repeatedly suspended from school (at least four times in the 2017-2018 school year), despite the repeated protestations of his mother. At times, the suspensions appeared to be a result of D.F.'s exhibited behavior connected to his disability – illegal and discriminatory in itself. At other times, he was removed from the school for no discernible reason – illegal or otherwise – except to harass D.F. and Ms. Omolade and purely to discriminate against him because of his disability.

20. SA Bed-Stuy1 knew that Ms. Omolade was a single mother. They also knew she was employed as a school safety agent for NYPD and the frequent suspensions caused her and her son great hardship.

21. Furthermore, on two occasions during the school year, the school made frivolous and harassing complaints to the Administration for Child Services ("ACS"). The first, made on December 5, 2017, alleged that Ms. Omolade could not control her child. On February 8, 2018, the ACS investigation was closed out as "unfounded." The investigator noted repeatedly that Ms. Omolade appeared to be an attentive, involved mother who ensured that D.F. made his appointments and was well taken care of. Upon information and belief, the person making the allegations on behalf of the school was defendant Marni Aronson.

22. Not having success the first time, SA Bed-Stuy1 called ACS again on April 2, 2018. Conversations between ACS, Success Academy, SA Bed-Stuy1 and Marni Aronson continued through April 20, where upon information and belief they continued to claim that Ms. Omolade could not control her child to ACS officials. '

23. The investigation lasted until May 20, 2018 when the agency closed the investigation out as unfounded against Ms. Omolade, noting that she takes all steps to ensure her son's mental health needs are met.

24. In the course of the second ACS investigation, a meeting was held at Success Academy Headquarters on Pine Street in lower Manhattan. Ms. Omolade, the ACS Child Protective Specialist, Marni Aronson and Success Academy lawyers attended the meeting. At the meeting, the ACS specialist noted that SA Bed-Stuy1 isolates D.F. from his peers. The posited that the isolation may be causing him to act impulsively as his

5

only way to get attention from school staff. They said his treatment at school, by suspending him, isolating him, and revoking his privileges was a cause for concern and may be exacerbating his condition. His treatment in school, exacerbating his mental disabilities, further harassed D.F. to drive him out of the school.

25. Marni Aronson and SA Bed-Stuy1 did not alter their treatment of D.F. despite being told this by a professional at the meeting.

26. The frivolous, bad faith allegations made to ACS by Marni Aronson triggered New York Police Department Internal Affairs Bureau investigations against Ms. Omolade due to her job, causing her to suffer further emotional distress.

27. On February 27, 2018, SA Bed-Stuy1 at the behest of Marni Aronson, physically and forcibly removed D.F. from the school during regular school hours and literally dumped him at the 79th Police Precinct, leaving him in police custody.

28. D.F. committed no crime and was taken to the precinct for no legitimate criminal justice purpose or any other legitimate purpose. Indeed, even children who are accused of a crime in school must be taken home, to Family Court, or a police officer must be called. If a police officer is so notified, the officer must notify the parents and if they are unavailable, the child must be taken directly to Family Court, not the police precinct. *See* N.Y. Fam. Ct. Act §§ 305.1 and 305.2.

29. However, in the defendant's zeal to discriminate against D.F. and continue their campaign of harassment against him and his mother, they just dumped him at the police precinct to sit and wait with strangers.

30. In May and June, 2018, as part of the continuing pattern of harassment and discrimination, defendant Marni Anderson and other employees of SA Bed-Stuy1 told

Ms. Omolade that if D.F. stayed at the school he would be left behind a grade. There was no legitimate purpose to leave him behind a grade because he at least met expectations in his subjects.

31. D.F. did not return to the Success Academy system for the 2018-2019 school year.

## DAMAGES

32. As a direct and proximate result of the acts of defendants, plaintiff suffered the following injuries and damages:

   a. Severe Emotional Distress;

   b. Loss of educational opportunity;

   c. Attorneys' fees and costs.

## FIRST CAUSE OF ACTION – DISCRIMINATION AGAINST D.F.
(42 USC § 1983 – Violation of § 504 by Discriminating Against D.F. as to Success Academy, SA Bed-Stuy1, and Marni Aronson)

33. The above paragraphs are here incorporated by reference.

34. D.F. is diagnosed with ODD and ADHD, disabilities that substantially limits one or more major life activities. He is therefore an "individual with a disability" under §504 of the Rehabilitation Act of 1973.

35. D.F. is "otherwise qualified" to attend Success Academy within the meaning of §504 of the Rehabilitation Act of 1973.

36. He has been "excluded from benefits" solely due to his disability within the meaning of §504 of the Rehabilitation Act of 1973.

37. Success Academy and SA Bed-Stuy1 each receive federal funding, making them subject to §504 of the Rehabilitation Act of 1973.

7

38.     Defendants Success Academy, SA Bed-Stuy1, and Marni Aronson failed to make reasonable accommodations for D.F. and discriminated against him by repeatedly suspending him; keeping D.F in isolation; threatening to leave him back a grade; making bad faith ACS allegations against Omolade; and removing him from school and taking him to a Brooklyn police precinct.

39.     The defendants' willful and intentional discriminatory acts taken against D.F. and his mother violates §504 of the Rehabilitation Act of 1973.

40.     Plaintiff was injured as a result of defendants' wrongful acts.

## SECOND CAUSE OF ACTION
(42 U.S.C. § 1983- Municipal and Supervisory Liability as to Success Academy, the Board of Trustees, and Eva Moskowitz)

41.     The above paragraphs are here incorporated by reference.

42.     Pursuant to N.Y. Education Law § 2853(f), the Board of Trustees of a Charter School has final policy making authority for the charter schools under its jurisdiction.

43.     Under the above referenced law, the Board of Trustees of a Charter School can also delegate certain decision making authority to employees. Upon information and belief, the Success Academy Board of Trustees delegates certain decision making authority to CEO Eva Moskowitz.

44.     The allegations of illegal treatment of students with disabilities is well known to all the Board of Trustees, CEO Eva Moskowitz, and Success Academy. In 2015, New York City Schools Chancellor Carmen Farina explained that comparing a non-charter public school to a Success Academy school in test scores was comparing apples to

oranges because we keep all our kids from the day they walk into the building."[2]

45. The 2014-2015 Success Academy Family Handbook, which is introduced by CEO Eva Moskowitz, explains its "zero tolerance approach" when it comes to discipline. In a Complaint filed with the United States Department of Education Office of Civil Rights, 14 complainants with disabilities who were Success Academy students, joined by the Public Advocate of the City of New York and the Chair of the Committee on Education of the Council of the City of New York, alleged that the inflexible zero tolerance approach amounts to discrimination against children with disabilities. The rigid rules and the practice of "counseling out" students with disabilities from the Success Academy network amounted to discrimination.[3] The Office of Civil Rights vowed to investigate.[4]

46. Defendants further are aware and established a policy of ignoring lawful orders of impartial hearing officers to reinstate students with disabilities who had been suspended from school. During the 2017-2018 school year, in house lawyers for Success Academy directed parents that their children who were ordered back to school were still suspended and were prohibited from school. This was clearly Success Academy policy.

47. The allegations made in the preceding paragraphs, among others involving the mistreatment of students with disabilities, were the subject of a complaint filed with the State Education Department. All the allegations were substantiated.

48. The named defendants knew and in fact established a policy and practice that

---

[2] https://www.nytimes.com/2015/04/07/nyregion/at-success-academy-charter-schools-polarizing-methods-and-superior-results.html
[3] The Complaint can be found here: https://images.law.com/contrib/content/uploads/documents/389/39711/a_and_parent_of_a_et_al._1-20-16.pdf
[4] https://www.nydailynews.com/new-york/education/nyc-charter-school-probed-alleged-bias-disabled-kids-article-1.2634057

students with disabilities were discriminated against by not making reasonable accommodations for them, that they were suspended repeatedly in violation of law, were pushed out of the school through harassment. Nevertheless, they failed and continue to fail to take corrective actions to stop the discrimination in their schools.

49. The above described policies and customs and failures to train, supervise, or discipline demonstrated willful deliberate indifference on the part of these policymaking defendants and were the cause of the violations of Plaintiff's damages and are liable to plaintiff under §1983.

50. Plaintiff was injured as a result of defendants' willful, intentional deliberate indifference.

WHEREFORE, Plaintiff demands judgment against the Defendants in favor of Plaintiff in an amount to be determined for each of Plaintiff's causes of action and granting such other and further relief as this Court deems just and proper

DATED:   April 22, 2019
         New York, New York                Respectfully yours,

                                           S/ *Leo Glickman*

TO:   Defendants

                                           By: Leo Glickman
                                           Stoll, Glickman & Bellina, LLP
                                           Attorneys for Plaintiff
                                           5030 Broadway, Ste. 652
                                           New York, NY 10034
                                           (718) 852-3710
                                           (718) 852-3586
                                           lglickman@stollglickman.com